53 F.3d 329
NOTICE: Fourth Circuit I.O.P. 36.6 states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Fourth Circuit.
 Wallace H. RICHARDSON, Sr., Plaintiff-Appellee,
v.
ORANGEBURG SCHOOL DISTRICT NO. 1, a Body Politic and
Corporate; the Board of Trustees for Orangeburg School
District Furtick, individually and in his official capacity
as the Chairman of the Board of Trustees; Carrol T. Fogle,
individually and in his official capacity as a member of the
Board of Trustees; Timothy O. Barr, individually and in his
official capacity as a member of the Board of Trustees,
Defendants-Appellants.
 No. 94-2092.
 United States Court of Appeals, Fourth Circuit.
 Argued: April 5, 1995.
Decided: May 3, 1995.
 
 Appeal from the United States District Court for the District of South Carolina, at Orangeburg. Charles E. Simons, Jr., Senior District Judge. (CA-92-154-5-6BC)
 ARGUED: William Henry Davidson, II, ELLIS, LAWHORNE, DAVIDSON & SIMS, P.A., Columbia, South Carolina, for Appellants. Fletcher N. Smith, Jr., Greenville, South Carolina, for Appellee. ON BRIEF: Andrew F. Lindemann, ELLIS, LAWHORNE, DAVIDSON & SIMS, P.A., Columbia, South Carolina, for Appellants. Michael F. Talley, Greenville, South Carolina, for Appellee.
 D.S.C.
 AFFIRMED.
 Before MURNAGHAN and MOTZ, Circuit Judges, and BUTZNER, Senior Circuit Judge.
 OPINION
 PER CURIAM:
 
 
 1
 The question presented here is whether the district court erred in denying three school board members qualified immunity on a school superintendent's claim that they had deprived him of a constitutionally protected liberty interest without due process.[1]
 
 
 2
 Wallace H. Richardson, Sr., an African-American, was hired by the Board of Trustees of the Orangeburg School District No. 1, as Superintendent of Schools for a two year period commencing July 1, 1990, and ending June 30, 1992. At all times relevant to the present suit, the school board was composed of five members: the defendants herein, Edward B. Furtick, Carrol T. Fogle, and Timothy O. Barr, who are white, and Clarence B. Jenkins and Peggy J. Tyler, who are African-Americans.
 
 
 3
 In April 1991, Richardson was evaluated by the school board. Each board member rated Richardson's performance in nine areas, such as "Board Relations," "Facilities Management," and "Management of Student Services." In each area, board members were asked to rate Richardson's performance as "Exceptionally Strong," "Effective," or "Needs Improvement." These ratings were totalled to determine a "final performance rating." Richardson received a sufficient number of "Needs Improvement" ratings that his overall performance rating was one of "Unsatisfactory." Richardson alleges that in fact his overall rating was judged to be satisfactory by the African-American board members and unsatisfactory only by the white school board members.
 
 
 4
 At its May 13, 1991 meeting, the school board voted in executive session to have certain allegations as to Richardson investigated by outside counsel. Specifically, the school board hired two attorneys, James B. Jackson, and Lawrence Keitt, to investigate a list of thirteen concerns regarding Richardson. For example, among the concerns were:
 
 
 5
 Dr. Richardson has allegedly told District Staff Members not to give information to Board Members....
 
 
 6
 Dr. Richardson allegedly gave approval to a tutoring program without receiving prior Board permission.
 
 
 7
 In a report dated August 23, 1991, Jackson and Keitt related their findings concerning all allegations against Richardson to the board. Their findings with respect to the above allegations were:
 
 
 8
 .. Dr. Richardson admits that he tells staff members not to give information to Board members because he feels this is insubordination. Dr. Richardson feels that all information imparted to Board members should come through him....
 
 
 9
 We find that the school board approved the tutorial program at a meeting held on February 21, 1991. According to the minutes of the meeting, the first day of the program had already been held ... prior to approval by the Board. We find that Dr. Richardson did approve the tutorial program and the program did appear to begin before actually receiving Board approval.
 
 
 10
 On October 16, 1991, the school board held a "special" meeting and voted to enter into executive session to discuss "the matter of personnel regarding the superintendent." Richardson and his attorney were present at this session. Following the executive session, a motion was made to relieve Richardson of his duties as superintendent, effective October 18, 1991, with his salary and benefits to be paid through the remainder of his contract. After the motion was made, but before it was voted on, Richardson made very brief comments. Then, the school board voted 3-1 to relieve Richardson of his duties; the three white members voted in favor of this action, one African-American member voted against it and the other apparently abstained.
 
 
 11
 On January 17, 1992, Richardson brought this action, asserting claims of deprivation of liberty and property interests without due process, slander, and intentional infliction of emotional distress. (Although it was somewhat unclear in proceedings below, Richardson clarified at oral argument before us that his complaint did not allege a Title VII claim; he did not, however, abandon his right to file such a claim.) The defendants moved for summary judgment on all claims and asserted qualified immunity as a defense to the liberty and property interest claims. The district court adopted a magistrate judge's report and recommendation and granted defendants summary judgment as to the property interest claim but denied it as to the remaining claims.
 
 
 12
 Pursuant to Mitchell v. Fosyth, 472 U.S. 511, 530 (1985), defendants appeal the denial of qualified immunity on the liberty interest claim.[2] Defendants do not assert that the relevant legal principles governing this claim were not clearly established at the time they discharged Richardson. Rather, their argument is that the undisputed facts in this case demonstrate that their actions did not violate these clearly established legal principles[3] and so Richardson failed to allege the violation of a constitutional right. See Siegert v. Gilley, --- U.S. ----, 111 S.Ct. 1789, 1794 (1991); DiMeglio, 45 F.3d at 803.
 
 
 13
 First, defendants contend that the district court erred in denying them qualified immunity on the liberty interest claim because they "offered undisputed evidence to indicate that the Appellee himself, rather than the Appellants, made a public disclosure of the allegations raised by the School Board." In other words, they argue that the statements made by Richardson after the executive session, were indisputably the first public disclosure of the Board's dissatisfaction with, and dismissal of, Richardson. That argument misconceives the evidence in the record. In his affidavit, Richardson states:
 
 
 14
 .. although the investigation was supposed to remain confidential, everybody knew that I was under investigation, the newspaper reporters and people in the community and it was even reported in the newspapers....
 
 
 15
 .. even before the investigation was completed, almost everybody knew about the findings.
 
 
 16
 (emphasis added). Thus, whether defendants, prior to the meeting, had made statements, concerning Richardson, or otherwise leaked information to the public and the press,[4] is very much in dispute. Accordingly, the district court did not err in refusing to grant summary judgment on this basis.
 
 
 17
 Alternatively, defendants claim that Richardson was not deprived of a liberty interest without due process because the undisputed facts establish that he "received all the process to which he was entitled." In support of this argument, defendants principally rely on the fact that Richardson and his counsel assertedly "were allowed to participate in the discussions in executive session." The magistrate judge held there was insufficient evidence in the record to support this argument. Defendants admitted in their objections to the magistrate's recommendations that the factual basis for this argument--two pages of Richardson's deposition in which he conceded he was present at the executive session, but did not state (indeed, was not asked) if he was then given an opportunity to clear his name--were "inadvertedly omitted from the information submitted to the Court." The defendants attached the omitted pages to their objections and requested that the district court consider the pages. The district court, however, except for a minor revision not here relevant, adopted the magistrate judge's report and recommendation in its entirety, apparently choosing not to consider the omitted pages of Richardson's deposition. On appeal, defendants--without explaining why this court should consider these deposition pages--reiterate their argument. In essence, defendants invite us to supplement the record on appeal; we decline their invitation. Cf. Dakota Industries, Inc. v. Dakota Sportswear, Inc., 988 F.2d 61, 63 (8th Cir.1993) ("authority to enlarge a record is rarely exercised and is a narrow exception to the general rule that an appellate court may consider only the record made before the district court"). It may be that defendants can produce facts to demonstrate that Richardson was afforded adequate process in the executive session, but they have not done so.
 
 
 18
 Defendants' final argument is that, even if not afforded any right to clear his name at the executive session, Richardson received adequate process because he " 'took the liberty' of making a public statement before the school board after the executive session had ended," and because "during the Jackson/Keitt investigation, [he] was given the opportunity to explain his position regarding the various areas of concern to the investigating attorneys." It is well established that "a public employee has the right to a name-clearing hearing at a meaningful time if his termination is accompanied by stigmatizing reasons for his termination that might impair future employment opportunities." Schleck v. Ramsey County, 939 F.2d 638, 642 (8th Cir.1991).[5] The purpose of the name-clearing hearing "is to provide the person an opportunity to clear his name. Once a person has cleared his name at a hearing, his employer, of course, may remain free to deny him future employment for other reasons." Board of Regents of State Colleges v. Roth, 408 U.S. 564, 573 n. 12 (1972). However, " 'due process requires a hearing at which he may test the validity of the proffered grounds for his dismissal.' " Rankin v. Independent School Dist. No. I-3, 876 F.2d 838, 842 (10th Cir.1989) (quoting Miller v. City of Mission, 705 F.2d 368, 373 (10th Cir.1983)), cert. denied, 498 U.S. 1068 (1991).
 
 
 19
 We have previously held that sufficient process was afforded for protection of a liberty interest when a plaintiff was "accorded notice of two hearings conducted specifically for the stated purpose of allowing him to attempt to refute the charges against him .... 'before the officials' considering them," and plaintiff "was allowed on both occasions to testify directly in refutation and to present corroborating witnesses." Boston v. Webb, 783 F.2d 1163, 1166 (4th Cir.1986). We need not here determine the precise contours of a constitutionally sufficient name-clearing hearing to conclude that Richardson's public statement after the executive session and his opportunity to "explain his position" during the investigation do not, by themselves, establish that Richardson received such a hearing. For example, these facts provide no evidence that Richardson had notice that he was being given an opportunity to "clear his name," let alone notice of a hearing "conducted specifically for the stated purpose of allowing him to attempt to refute the charges against him .... 'before the officials' " considering those charges. Id.
 
 
 20
 Accordingly, the district court's order denying defendants summary judgment on Richardson's liberty interest claim is
 
 
 21
 AFFIRMED.
 
 
 
 [1]
 The defendants also assert that they were entitled to absolute immunity because they are acting as legislators in terminating Richardson. That claim is meritless because it is clear that in doing so they were acting in an administrative rather than legislative capacity. See Roberson v. Mullins, 29 F.3d 132, 135 (4th Cir.1994)
 
 
 [2]
 The defendants also seek to have us review the denial of summary judgment on Richardson's other claims. They did not- and could notassert qualified immunity as to these state law claims. Thus, it is unclear that we have any jurisdiction to review these additional claims. See Swint v. Chambers County Com'n, 115 S.Ct. 1203, 1212 (1995). In any event, any jurisdiction that we do have is discretionary, see DiMeglio v. Haines, 45 F.3d 790, 808 (4th cir.1995), and we decline to exercise that discretion here. Similarly, because it involves a question unrelated to whether defendants violated clearly established law, we do not consider defendants' argument that the district court erred in construing the complaint to allege a liberty interest claim. Rather, we assume, without deciding, that this was proper. See Ogilbee v. Western Dist. Guidance Center, Inc., 658 F.2d 257, 259 (4th Cir.1981) ("By means of his allegation that '[p]laintiff's termination has damaged the plaintiff's reputation and good name,' Ogilbee's complaint might broadly be construed to claim deprivation of a liberty interest.")
 
 
 [3]
 As defendants note, the lower court apparently erred in addressing the qualified immunity defense pursuant to the subjective standard articulated in Wood v. Strickland, 420 U.S. 308 (1975), rather than the objective standard articulated in Harlow v. Fitzgerald, 457 U.S. 800 (1982). This, of course, does not prevent us from affirming the district court if its decision was correct under the applicable standard. This is so because we clearly have the authority to affirm the judgment of the district court for reasons different than those articulated by it. See, e.g., Pereria by Pereria v. Kozlowski, 996 F.2d 723, 724 (4th Cir.1993)
 
 
 [4]
 To the extent that defendants argue that they can only be liable if the school board officially issued a statement, we reject their argument. See Owen v. City of Independence, Mo., 560 F.2d 925, 929 & 934-936 (8th Cir.1977), aff'd, 445 U.S. 622, 633 n. 13 (1980)
 
 
 [5]
 Defendants do not argue that Richardson's termination was unaccompanied "by stigmatizing reasons" for termination