**John Peter BRADLEY, Plaintiff,**

v.

**Gary RAMSEY, an individual; the Town of Woodfin, North Carolina; Homer Honeycutt, an individual; Leonard Clark, an individual; David Clark, an individual; Geneva Maney, an individual; Donald Honeycutt, Jr, an individual; Wanda Haynes, an individual; and Joseph Ferikes, an individual, Defendants.**

**No. CIV.1:03 CV 73.**

United States District Court,
W.D. North Carolina,
Asheville Division.

March 25, 2004.

C. Frank Goldsmith, Jr., Goldsmith & Goldsmith, Marion, NC, Leon N. Patricios,

Thomas G. Schultz, John Bustard, Alan K. Fertel, Ferrell, Schultz, Carter & Fertel, P.A., Miami, FL, Thomas C. Manning, Manning & Crouch, Raleigh, NC, for Plaintiff.

Hal F. Askins, Jeffrey R. Edwards, Dept. of Justice, Michael W. Mitchell, Smith, Anderson, Blount, Dorsett, Mitchell & Jernigan, Raleigh, NC, Robert B. Long, Jr., W. Scott Jones, Long, Parker & Warren, P.A., Asheville, NC, William A. Blancato, Blancato, Doughton & Hart, PLLC, Winston–Salem, NC, Edward L. Eatman, Jr., Elizabeth A. Martineau, Anne–Charlotte Dowless, Hedrick, Eatman, Gardner & Kincheloe, Charlotte, NC, for Defendants.

## MEMORANDUM OF OPINION

THORNBURG, District Judge.

**THIS MATTER** is before the Court on motion of Defendants Town of Woodfin, Mayor Homer Honeycutt, Alderman Leonard Clark, Alderman David Clark, Alderman Geneva Maney, Alderman Donald Honeycutt, Jr., Alderman Wanda Haynes, and Town Attorney Joseph Ferikes (collectively, "Woodfin Defendants") for judgment on the pleadings and to dismiss.

### I. PROCEDURAL HISTORY

On May 22, 2002, Plaintiff filed a complaint asserting 13 different counts against 15 Defendants. Since that time, several claims and Defendants have been dismissed. Plaintiff's remaining claims against the Woodfin Defendants consist of a free of speech claim based on 42 U.S.C. §§ 1983 and 1985, a free speech claim based on the North Carolina Constitution,

a substantive due process claim based on § 1983, and North Carolina tort claims of wrongful discharge, intentional infliction of emotional distress, negligent infliction of emotional distress, unlawful intrusion into private affairs, and libel per se.[1] On November 3, 2003, the Woodfin Defendants moved that the Court dismiss these claims and render judgment in their favor on the pleadings.

### II. STATEMENT OF FACTS

A full recitation of the facts of this action are contained in the Court's Memorandum of Opinion filed October 7, 2003, and will not be repeated here. *See generally,* Memorandum of Opinion, at 3–5. However, for purposes of addressing the motions at bar, the Court sets forth the following facts specifically pertaining to the Woodfin Defendants.

In January 2002, the Plaintiff was hired as the new police chief for the Town of Woodfin, North Carolina. Complaint, ¶ 88. Plaintiff alleges that the Woodfin Mayor, Homer Honeycutt, gave him several improper orders and that he subsequently became aware of other corrupt behavior on the part of Honeycutt. *Id.,* ¶¶ 90–93. For example, Plaintiff alleges that the Mayor instructed him not to arrest drunk drivers or domestic abusers, not to search for drugs, and to focus law enforcement efforts solely against ethnic groups whose members do not vote in large numbers. *Id.,* ¶¶ 90, 101. Plaintiff reported these alleged improprieties to the North Carolina Police Benevolence Association ("NCPBA"). *Id.,* ¶ 94. The NCPBA responded by sending a letter to the Woodfin

---

1. The Plaintiff only asserts his libel per se claim against Mayor Honeycutt, not against all of the Woodfin Defendants. Also, Plaintiff has withdrawn his claim for tortious interference with business relations against Mayor Honeycutt. Plaintiff Bradley's Memorandum of Law in Opposition to the Motion for Judgment, Motion to Amend Judgment on the Pleadings and Motion to Dismiss of Woodfin Defendants ("Plaintiff's Memorandum"), filed December 19, 2003, at 21.

Board of Aldermen on February 13, 2002, recommending the Board ask the North Carolina State Bureau of Investigation (SBI) to investigate Honeycutt. *Id.*

Plaintiff alleges that, around the same time, though possibly before Mayor Honeycutt knew that he had called the NCPBA, Honeycutt asked District Attorney Ron Moore to show him a copy of the SBI's file of its DMV investigation that contained a letter Plaintiff received threatening to reveal Plaintiff's alternative sexual lifestyle if he persisted in his allegations regarding the DMV. *Id.,* ¶ 95. Plaintiff does not allege that Moore complied with Honeycutt's request; however, Plaintiff does claim that Honeycutt, who was at that time an employee with the Buncombe County Sheriff's Department, obtained the file from the Sheriff's Department. *Id.,* ¶ 103, 190. Plaintiff further alleges that Mayor Honeycutt threatened to reveal the contents of the letter to retaliate against him for not following the Mayor's corrupt orders. *Id.,* ¶ 173. Plaintiff alleges that Mayor Honeycutt did, in fact, disclose the contents of the letter to the Board of Aldermen and that the Mayor and the Board of Aldermen eventually disclosed the information to the press and to attendees of a February 19, 2002, Town meeting. *Id.,* ¶ 174–75.

On February 25, 2002, the Board of Aldermen fired the Plaintiff from his job as police chief. *Id.,* ¶ 109. On the personnel action statement recording Plaintiff's termination, the Woodfin Defendants stated that Plaintiff was insubordinate, refused to follow orders, and did not communicate with his superiors. *Id.,* ¶ 156. Plaintiff alleges that the Woodfin Defendants fabricated these reasons and published these allegedly false statements to the press. *Id.,* ¶ 156. Plaintiff also contends that knowledge of his sexual lifestyle contributed to the Woodfin Defendants' decision to fire him but that their primary reasons for terminating him were his refusal to follow Mayor Honeycutt's corrupt orders and his reporting Mayor Honeycutt's corruption. *Id.,* ¶¶ 159–160, 169.

## III. DISCUSSION

### A. Standard of review.

In ruling on a Rule 12(c) motion for judgment on the pleadings, the Court "must accept the nonmovant's allegations as true; viewing the facts in the light most favorable to the nonmoving party. Judgment on the pleadings should be granted if the movant is entitled to judgment as a matter of law." *Moore's Federal Practice,* § 12.38 (3d ed.) (internal quotations and citations omitted). The standard is similar to that used in ruling on a Rule 12(b)(6) motion "with the key difference being that on a 12(c) motion, 'the court is to consider the answer as well as the complaint.'" *Continental Cleaning Serv. v. United Parcel Serv., Inc.,* 1999 WL 1939249, *1 (M.D.N.C.1999) (quoting *Menominee Indian Tribe v. Thompson,* 943 F.Supp. 999, 1005 (W.D.Wis.1996)). The Court should also consider documents attached to the pleadings. Fed.R.Civ.P. 10(c); *see also Fayetteville Investors v. Commercial Builders, Inc.,* 936 F.2d 1462 (4th Cir. 1991).

The Court will first determine whether Plaintiff's federal claims survive the Woodfin Defendants' motion. The Court will then determine whether the Plaintiff's state claims are sufficiently related to the federal claims for it to assert supplemental jurisdiction. If the Court does have supplemental jurisdiction over Plaintiff's state claims, it will determine whether those state claims survive this motion. Finally, the Court will consider the Woodfin Defendants' contention that Plaintiff is not entitled to punitive damages.

## B. Federal claims.

### 1. Free speech.

■ Plaintiff alleges that he was suspended and eventually fired from his position as Woodfin Police Chief "because he exercised his right to free speech by publicly complaining of Mayor Honeycutt's illegal and unethical" behavior. Complaint, ¶ 125. He claims that such retaliation for exercising protected speech constitutes a violation of the First Amendment and is actionable under 42 U.S.C. §§ 1983 and 1985. *Id.*, ¶ 127. The Woodfin Defendants conclusively state, without advancing any argument, that Plaintiff "fails to make out a claim for a violation of his rights to free speech." Town of Woodfin Defendants' Brief in Support of Motion for Judgment on the Pleadings and Motion to Dismiss ("Woodfin Defendants' Brief"), filed November 3, 2003, at 8. The Woodfin Defendants further argue that Plaintiff has not alleged facts sufficient to hold the Town of Woodfin vicariously liable for an alleged First Amendment violation. *Id.*, at 7–8.

■ A government employee claiming retaliatory discharge in violation of the First Amendment must allege that his speech involved an area of public concern, that legitimate government interests in keeping the employee silent do not outweigh the employee's interest in speaking, and that there was a causal link between the employee's speech and the discharge. *See Hall v. Marion Sch. Dist. Number 2,* 31 F.3d 183, 192 (4th Cir.1994).[2] In the present case, the Plaintiff has alleged that he spoke to both the NCPBA and the local press about corruption within the Woodfin

Town Hall, clearly a matter of public concern. Complaint, ¶¶ 122–23. It would be difficult to conceive of a legitimate interest the government would have in concealing corruption, and whatever that interest may be, it clearly does not outweigh Plaintiff's interest in speaking. Finally, Plaintiff has alleged that the Woodfin Defendants terminated him "because" he exercised his right to free speech. *Id.*, ¶ 125. This allegation satisfies the causation element. Therefore, Plaintiff states a claim for retaliatory discharge in violation of the First Amendment.

■ Defendants argue that, even if Plaintiff does state such a claim, the Town of Woodfin is entitled to judgment on the pleadings because Plaintiff has not sufficiently pled the facts required to find the Town vicariously liable. However, Defendants correctly admit that the Town may be held liable if Plaintiff alleges that "his rights were violated by someone with final policymaking authority for the Town of Woodfin." Woodfin Defendants' Brief, at 8; *see Pembaur v. City of Cincinnati,* 475 U.S. 469, 480, 106 S.Ct. 1292, 89 L.Ed.2d 452 (1986). Plaintiff alleges that the Mayor and Board of Aldermen violated his constitutional rights. Though the Defendants inexplicably claim otherwise, the Mayor and Board of Aldermen clearly possess final policymaking authority. Woodfin Defendants' Brief, *supra.* Therefore, the Town of Woodfin may be held vicariously liable, and dismissing the Town on the pleadings would be inappropriate.

### 2. Substantive due process.

■ Plaintiff alleges in Count VII of his complaint that the Woodfin Defendants

---

**2.** Courts give conflicting statements on whether the employee's speech must be a "substantial factor" in the employer's decision to discharge the employee or whether it must be a "but for" cause. *Compare Hall, supra, with Mt. Healthy City Sch. Dist. Bd. of*

*Educ. v. Doyle,* 429 U.S. 274, 287, 97 S.Ct. 568, 50 L.Ed.2d 471 (1977). Since Plaintiff alleges "but for" causation, the higher of the two standards, his pleadings satisfy either standard. Therefore, the Court need not decide which standard is appropriate.

made false and stigmatizing remarks in the course of suspending and terminating him. Complaint, ¶ 160. Specifically, he claims that in retaliation for refusing to participate in corruption and for reporting that corruption, the Woodfin Defendants accused him of "insubordination and other offenses that seriously question his ability to be an effective and cooperative law enforcement officer." *Id.*, ¶¶ 159–60, 169. Plaintiff contends that these actions deprived him of a liberty interest in "continued employment opportunities" and that the actions constitute a deprivation of substantive due process. *Id.*, ¶ 160.

 Plaintiff does not state a claim for deprivation of substantive due process because there is no protected liberty interest in "continued employment opportunities." However, in his memorandum, Plaintiff emphasizes the fact that the Woodfin Defendants did not afford him of an opportunity to refute the allegedly false and stigmatizing statements. Plaintiff's Memorandum, at 8–10. Plaintiff provides adequate support for the proposition that "the dismissal of a governmental employee accompanied by a 'charge against him that might seriously damage his standing and associations in his community' would ... trigger the due process right to a hearing at which the employee could refute the charges and publicly clear his name." *Owen v. City of Independence, Mo.*, 445 U.S. 622, 633 n. 13, 100 S.Ct. 1398, 63 L.Ed.2d 673 (1980) (quoting *Bd. of Regents v. Roth*, 408 U.S. 564, 573, 92 S.Ct. 2701, 33 L.Ed.2d 548 (1972)); *see also Stone v. University of Maryland Med. Sys. Corp.*, 855 F.2d 167, 173 n. 5 (4th Cir.1988); *Young v. Annarino*, 123 F.Supp.2d 915,

925 (W.D.N.C.2000). A claim that the Plaintiff was denied an opportunity to refute Defendants' accusations, however, focuses on the procedure by which Plaintiff lost his job and is a claim of procedural due process, not substantive due process.[3] Therefore, the Court will dismiss Plaintiff's substantive due process claims but recognizes that Plaintiff has properly asserted a procedural due process claim that focuses on the process by which Plaintiff was terminated.

## C. Supplemental jurisdiction.

 The Woodfin Defendants argue that the Court should not exercise supplemental jurisdiction over the Plaintiff's claims that are based on North Carolina law. Much of the Woodfin Defendants' argument is irrelevant because it assumes that all of the Plaintiff's federal claims have been dismissed. However, the Woodfin Defendants do make the relevant, though incorrect, statement that the Plaintiff's state claims do not arise out of the same case or controversy as his federal claims.

Title 28 U.S.C. § 1367(a) gives federal courts jurisdiction over state claims "that are so related to claims in the action within [the court's] original jurisdiction that they form part of the same case or controversy." No party disputes that this Court has original jurisdiction over the federal free speech claim, so the issue becomes whether the state law claims form part of the same case or controversy as the federal free speech claim. The Fourth Circuit has explained that, for claims to form part of the same case or controversy, "[t]he state

---

**3.** Substantive due process claims focus on the substance of governmental decisions, not on the procedures used to make or implement them. *See, Front Royal and Warren County Indus. Park Corp. v. Town of Front Royal, Va.*, 135 F.3d 275, 287–88 (4th Cir.1998) (internal quotation marks and citations omitted) (explaining that substantive due process "serves as an absolute check on certain governmental actions *notwithstanding* the fairness of the procedures used to implement those actions.").

and federal claims must derive from a common nucleus of operative fact." *Axel Johnson, Inc. v. Carroll Carolina Oil Co., Inc.*, 145 F.3d 660, 662 (4th Cir.1998) (quoting *United Mine Workers of America v. Gibbs*, 383 U.S. 715, 725, 86 S.Ct. 1130, 16 L.Ed.2d 218 (1966)).

All of Plaintiff's state claims against the Woodfin Defendants arise out of 1) Plaintiff's termination or 2) the way in which the Woodfin Defendants obtained and made use of the information in the SBI report. The federal free speech claim arises out of the act of terminating the Plaintiff. Clearly, the state claims that arise out of the actual act of terminating Plaintiff—the state free speech claim and the wrongful discharge claim—are part of the same case or controversy as the federal free speech claim which arises out of that very same act. The libel per se claim arises out of statements the Mayor made about Plaintiff's job performance in the process of terminating him. These statements are very closely related to the actual termination, and the libel per se claim, therefore, is part of the same case or controversy as the federal free speech claim.

The other state claims—intentional infliction of emotional distress, negligent infliction of emotional distress, and unlawful intrusion into private affairs—arise out of the Woodfin Defendants' obtaining and disclosing the information about Bradley's sexual lifestyle. One can reasonably infer from the complaint that the Woodfin Defendants used the information in the SBI report to justify their decision to terminate Plaintiff, a decision that Plaintiff claims to violate his First Amendment rights. Indeed, Plaintiff claims that the Woodfin Defendants disclosed the contents of the SBI file to the local press and to attendees at a Town meeting less than one week before

terminating Plaintiff. Complaint, ¶ 175. Furthermore, Plaintiff alleges that knowledge of his sexual lifestyle influenced the Aldermen's vote to fire him. *Id.*, ¶ 160. One could summarize Plaintiff's allegations by stating that the Woodfin Defendants wanted to terminate Plaintiff for reporting corruption, and they used information from the SBI file to do so. Therefore, Plaintiff's alleged exercise of free speech by reporting Mayor Honeycutt, the Mayor's obtaining the SBI report, the Woodfin Defendants' disclosing the contents of the report, and Plaintiff's termination form a "common nucleus of operative facts," and 28 U.S.C. § 1367(a) confers upon the Court supplemental jurisdiction over all of Plaintiff's state claims against the Woodfin Defendants.

### D. State claims.

#### 1. Qualified immunity.

The Woodfin Defendants, without citing a single authority, state that the doctrine of qualified immunity protects them from Plaintiff's state law claims. Their assertion fails for two reasons. First, "[q]ualified immunity is an affirmative defense. Therefore, it must be pleaded by the defendant official." *Bryant v. Muth*, 994 F.2d 1082, 1086 (4th Cir.1993); *see also Satchell v. Dilworth*, 745 F.2d 781, 784 (2d Cir.1984) (holding that "[f]ailure to plead [the qualified immunity] defense in the answer results in the waiver of that defense and its exclusion from the case") (internal quotation marks omitted). The Defendants did not assert this affirmative defense in a pleading and cannot raise it in this motion.

Second, in the motion before the Court, the Defendants attempt to assert the qualified immunity defense only

against Bradley's state law claims.[4] But qualified immunity does not protect governmental officials against state law claims. *See Richardson v. Orangeburg Sch. Dist. No. 1*, 53 F.3d 329 (table), 1995 WL 255941, *3 n. 2 (4th Cir.1995); *Nelson v. Prison Health Servs., Inc.*, 991 F.Supp. 1452, 1465 (N.D.Fla.1997) (citing *Davis v. Monroe County Bd. of Educ.*, 120 F.3d 1390, 1409 (11th Cir.1997) ("[Q]ualified immunity does not shield officials from liability grounded on state law.")). Therefore, the qualified immunity defense would not protect the Woodfin Defendants against Plaintiff's state law claims even if they had asserted the defense in their answer.

### 2. Public official immunity.

 The Woodfin Defendants claim that public official immunity protects them "in their individual capacities from the state law claims set forth in Plaintiff's Complaint." Woodfin Defendants' Brief, at 10. "The general rule is that a public official is immune from personal liability for mere negligence in the performance of his duties, but he is not shielded from liability if his alleged actions were corrupt or malicious or if he acted outside and beyond the scope of his duties." *Slade v. Vernon*, 110 N.C.App. 422, 428, 429 S.E.2d 744, 747 (1993). Also "[p]ublic official immunity is not a defense to intentional torts." *Mandsager v. Univ. of N.C. at Greensboro*, 269 F.Supp.2d 662, 681 (M.D.N.C.2003); *see also Wells v. N.C. Dep't of Correction*, 152 N.C.App. 307, 320, 567 S.E.2d 803, 813 (2002) ("if the plaintiff alleges an intentional tort claim, a determination is unnecessary since, in such cases, neither a public official nor a public employee is immunized from suit in his individual capacity.") Therefore, public offi-

cial immunity does not protect the Woodfin Defendants from Plaintiff's intentional tort claims of wrongful discharge, intentional infliction of emotional distress, unlawful intrusion into private affairs, and libel per se. Furthermore, it does not protect the Woodfin Defendants against the North Carolina constitutional claim because the conduct that Plaintiff has alleged, retaliatory discharge, goes beyond the "mere negligence" described in *Slade*. Finally, Plaintiff concedes the Woodfin Defendants are immune from suit, in their individual capacities, for negligent infliction of emotional distress. Plaintiff's Memorandum, at 18. Therefore, Plaintiff's claim of negligent infliction of emotional distress against the Woodfin Defendants, in their individual capacities, will be dismissed. Public official immunity does not protect the Defendants against any other claims.

### 3. Free speech claim based on North Carolina Constitution.

The Woodfin Defendants make no argument that this claim should be dismissed on the pleadings. Therefore, it will not be dismissed.

### 4. Wrongful discharge.

 The Woodfin Defendants claim Plaintiff does not state a claim of wrongful discharge. "To properly plead a wrongful discharge case, Plaintiff must identify a state public policy and then allege that [he] was discharged in violation of that policy." *Jackson v. Blue Dolphin Communications of N.C., L.L.C.*, 226 F.Supp.2d. 785, 792 (W.D.N.C.2002). Plaintiff alleges that the Woodfin Defendants fired him "because he refused to follow Mayor Honeycutt's im-

---

4. The Woodfin Defendants assert the qualified immunity defense to support the proposition that "should the Court choose to accept supplemental jurisdiction over the state law

claims against the Town of Woodfin Defendants, these claims should be dismissed." Woodfin Defendants' Brief, at 10.

proper directives not to enforce the criminal and traffic laws of North Carolina and because he reported Mayor Honeycutt's illegal and unethical conduct to ... the PBA and the local press." Complaint, ¶ 169. It is North Carolina's public policy that "citizens cooperate with law enforcement officials in the investigation of crimes," *Caudill v. Dellinger*, 129 N.C.App. 649, 657, 501 S.E.2d 99, 104 (1998), and that "the safety of persons and property on or near the public highways be protected." *Coman v. Thomas Mfg. Co., Inc.*, 325 N.C. 172, 176, 381 S.E.2d 445, 447 (1989). Therefore, Plaintiff has alleged that the Woodfin Defendants fired him in violation of at least two public policies of North Carolina, and he has properly stated a claim of wrongful discharge.

### 5. Intentional infliction of emotional distress.

In North Carolina, intentional infliction of emotional distress consists of "(1) extreme and outrageous conduct, (2) which is intended to cause and does cause (3) severe emotional distress to another. The tort may also exist where defendant's actions indicate a reckless indifference to the likelihood that they will cause severe emotional distress." *Dickens v. Puryear*, 302 N.C. 437, 452, 276 S.E.2d 325, 335 (1981). The Woodfin Defendants state that Plaintiff has not properly alleged intentional infliction of emotional distress because he has not "set forth facts to show intent to cause severe emotional distress" and because the conduct that he alleges is not "extreme and outrageous." Woodfin Defendants' Brief, at 16–17.

The Woodfin Defendants' contention that Plaintiff has not set forth facts that show intent to cause severe emotional distress fails. Plaintiff alleges the Woodfin Defendants "intentionally, or at least with reckless indifference, caused Pete Bradley severe and disabling emotional distress."

Complaint, ¶¶ 174–76. Rule 9(b) of the Federal Rules of Civil Procedure states that "intent ... of a person may be averred generally." Therefore, Plaintiff has properly pled the intent element.

The Woodfin Defendants' contention that Plaintiff's alleged facts are not "extreme and outrageous" fails as well. "Conduct is extreme and outrageous when it exceed[s] all bounds of decency and is regarded as atrocious, and utterly intolerable in a civilized community." *Pruett v. Town of Spindale, N.C.*, 162 F.Supp.2d 442, 447 (W.D.N.C.2001). Plaintiff has alleged that Mayor Honeycutt blackmailed him in order to cover up the Mayor's own corrupt practices, and that the Mayor and other Woodfin Defendants fabricated reasons for terminating the Plaintiff when their actual motive was to retaliate against him for reporting corruption. Complaint, ¶¶ 173–74; 159–160; 169. Quite clearly, for individuals to use their elected positions to retaliate against and blackmail a citizen who reports their illegal activity is "utterly intolerable in a civilized community." This alleged behavior is "extreme and outrageous," and Plaintiff's intentional infliction of emotional distress claim will survive this motion.

### 6. Negligent infliction of emotional distress.

Plaintiff acknowledges that he may no longer assert this claim against the Woodfin Defendants in their individual capacities, but he maintains the claim against the Defendants in their official capacities. Plaintiff's Memorandum, at 18. The Woodfin Defendants claim that Plaintiff fails to allege it was "reasonably foreseeable" that Defendants' conduct would cause severe emotional distress. Woodfin Defendants' Brief, at 17. But Plaintiff clearly alleged in the complaint that "it was reasonably foreseeable that [Defendants' conduct] would cause Pete Bradley

severe ... emotional distress." Complaint, ¶¶ 180–82. Therefore, the Defendants' argument fails.

### 7. Unlawful intrusion into private affairs.

 Defendants argue that "Plaintiff fails to make out a claim for intrusion into private affairs under North Carolina law." Woodfin Defendants' Brief, at 11. In North Carolina, "one who intentionally intrudes, physically or otherwise, upon the solitude or seclusion of another or his private affairs or concerns, is subject to liability to the other for invasion of his privacy, if the intrusion would be highly offensive to a reasonable person." *Miller v. Brooks,* 123 N.C.App. 20, 26, 472 S.E.2d 350, 354 (1996) (quoting *Smith v. Jack Eckerd Corp.,* 101 N.C.App. 566, 568, 400 S.E.2d 99, 100 (1991)). However, North Carolina does not recognize the public disclosure of embarrassing private facts as a tort. *Hall v. Post,* 323 N.C. 259, 265, 372 S.E.2d 711, 714 (1988).

 Plaintiff's complaint focuses more on the Woodfin Defendants' disclosure of embarrassing information about him than it does on their prying into his affairs to obtain that information. Therefore, to the extent that Plaintiff's claim is based on the disclosure of the SBI report, it is dismissed. *See French v. United States,* 55 F.Supp.2d 379, 382 (W.D.N.C. 1999). Plaintiff does, however, allege that Mayor Honeycutt sought the file from former Defendant Moore, and one can reasonably infer from the complaint that Mayor Honeycutt sought the report and was successful in obtaining it from the Buncombe County Sheriff's Department. Complaint, ¶¶ 95, 103, 190. The complaint also alleges that Plaintiff received assurances from the SBI agents that the contents of the letter would be confidential. *Id.,* ¶ 186. Therefore, Bradley had a reasonable expectation that the report would

be confidential, and for the Mayor to seek and obtain the report, especially for the purposes alleged, would be highly offensive. Therefore, Bradley has properly alleged his claim for unlawful intrusion into private affairs against Mayor Honeycutt and, vicariously, against the Town of Woodfin. *See Pembaur, supra.*

 However, the complaint implies that Mayor Honeycutt voluntarily released the SBI report to the other Woodfin Defendants in order to bolster the Mayor's case for firing Plaintiff. Complaint, ¶ 191. In other words, the Aldermen and Town Attorney did not intrude into Plaintiff's affairs to obtain the information about his private life; the Mayor gave it to them without solicitation. Therefore, Plaintiff has not properly pled this cause of action against Defendants Leonard Clark, David Clark, Geneva Maney, Donald Honeycutt, Jr., Wanda Haynes, or Joseph Ferikes. This cause of action against those Defendants will, therefore, be dismissed.

### 8. Libel per se.

 The Woodfin Defendants argue that the Court should dismiss Plaintiff's libel per se claim because Plaintiff has admitted that most of the information contained in the letter about his sexual habits is true. Woodfin Defendants' Brief, at 15–16. However, Plaintiff's libel per se claim is not premised on the Mayor's releasing information about Plaintiff's sexual habits. The claim pertains to the Mayor's statements about Bradley's insubordination, refusal to follow orders, and unwillingness to communicate with his superiors. Complaint, ¶¶ 196–202. Therefore, Defendants' argument completely misses the mark, and the Court will not dismiss this count of the complaint.

### E. Punitive Damages.

 The Woodfin Defendants claim that punitive damages are inappropriate.

Woodfin Defendants' Brief, at 18. Plaintiff admits that he is not entitled to punitive damages against the Town of Woodfin or against any of the Woodfin Defendants in their official capacities. Plaintiff's Memorandum, at 26–27. Plaintiff still seeks punitive damages against the Woodfin Defendants, other than the Town, in their individual capacities in counts II, IV, VII, VIII, IX, X, and XI. Plaintiff also seeks punitive damages against Mayor Honeycutt, in his individual capacity in count XII.

■ With regard to Plaintiff's § 1983 claim, the Woodfin Defendants state that punitive damages are "only available against an official in his personal capacity under limited circumstances." Woodfin Defendants' Brief, *supra.* They do not state what those limited circumstances are or that this case does not fall within those limited circumstances. In fact, punitive damages are available against an individual defendant in a § 1983 action "when the defendant's conduct is shown to be motivated by evil motive or intent, or when it involves reckless or callous indifference to the federally protected rights of others." *Smith v. Wade,* 461 U.S. 30, 56, 103 S.Ct. 1625, 75 L.Ed.2d 632 (1983). In the present case, Plaintiff has alleged that elected officers blackmailed, terminated, and publicly humiliated him in order to cover up their own corruption and to retaliate against him for reporting that corruption. This alleged conduct meets the standard set forth in *Wade* and, therefore, Plaintiff has properly alleged his punitive damages claim against all of the Woodfin Defendants, in their individual capacities, in his § 1983 action, except as to the Town of Woodfin.

■ With regard to Plaintiff's state law claims, the Woodfin Defendants assert that punitive damages are "only available against an official under limited circumstances." Woodfin Defendants' Brief, *su-*

*pra.* Again, Defendants do not assert that this case does not fall within those limited circumstances. A public officer defendant "may be liable for punitive damages where his conduct reaches a level higher than mere negligence and amounts to willful, wanton, malicious, or reckless indifference to foreseeable consequences." *Thompson v. Town of Dallas,* 142 N.C.App. 651, 656, 543 S.E.2d 901, 905 (2001) (internal quotation marks and citations omitted). "A defendant acts with malice when he wantonly does that which a man of reasonable intelligence would know to be contrary to his duty and which he intends to be prejudicial or injurious to another." *Grad v. Kaasa,* 312 N.C. 310, 313, 321 S.E.2d 888, 890 (1984). Quite clearly, people of reasonable intelligence would know that the alleged actions of the Woodfin Defendants are contrary to the duties they were elected to perform. Therefore, Plaintiff has properly alleged punitive damages claims in all of his state claims against the Woodfin Defendants, other than the Town, in their individual capacities.

## IV. ORDER

IT IS, THEREFORE, ORDERED, that the motion of the Woodfin Defendants for judgment on the pleadings and motion to dismiss is hereby **GRANTED** as follows:

1. Plaintiff's substantive due process claim, as stated in count VII of the Complaint is hereby **DISMISSED WITH PREJUDICE**, but the Court retains the Plaintiff's procedural due process claim as stated *infra;*

2. Plaintiff's claims against the Woodfin Defendants, in their individual capacities only, for negligent infliction of emotional distress, as stated in Count X of the Complaint, are hereby **DISMISSED WITH PREJUDICE;**

3. Plaintiff's claims for unlawful intrusion into private affairs, as stated in count

XI of the Complaint, are hereby **DISMISSED WITH PREJUDICE** as to Defendants Leonard Clark, David Clark, Geneva Maney, Wanda Haynes, and Joseph Ferikes. The Court retains jurisdiction over Plaintiff's claims for unlawful intrusion into private affairs as to the Town of Woodfin and Homer Honeycutt; and

4. Plaintiff's claims for tortious interference with business relations, as stated in count XIII of the Complaint are hereby **DISMISSED WITH PREJUDICE** in their entirety.

**IT IS FURTHER ORDERED** that the motion of the Woodfin Defendants for judgment on the pleadings and motion to dismiss is hereby **DENIED** as to Plaintiff's remaining claims.

The remaining parties in this action are directed to file their report of initial attorneys' conference within 15 days from entry of this Memorandum of Opinion. *See* Fed. R.Civ.P. 26(f); L.R. 16.1.